

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| R.L., by and through her parents and next, Friends, Mr. and Mrs. L., Plaintiff, | : : : | CIVIL ACTION NO. 3:02 CV 0016 (CFD) |
| v. | : : | |
| PLAINVILLE BOARD OF EDUCATION, Defendant. | : : | FEBRUARY 25, 2004 |

### DEFENDANT PLAINVILLE BOARD OF EDUCATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO SUBMIT ADDITIONAL EVIDENCE

This memorandum is submitted in support of the defendant Plainville Board of Education's motion to submit additional evidence and incorporates herein by reference the legal arguments submitted on or about March 7, 2003 in its memorandum in opposition to the plaintiff's additional evidence. The evidence submitted herewith as Exhibit B constitutes correspondence between the parties regarding the change in R.L.'s medical condition. More specifically, since the conclusion of the administrative due process hearing at issue in this case, the student has been diagnosed with sleep apnea and has experienced seizures which were the reason for which the planning and placement team recommended the evaluation by Dr. Greenstein. In this regard, this information is relevant for this Court to understand the change in

the student's medical condition[1] prompting the recommendations by Dr. Greenstein and ultimately, reviewed by the planning and placement team.

Dr. Greenstein's October 2002 evaluation speaks to the student's condition at the time that he saw her – October 2002. The school year at issue in this hearing ended in June 2002. Dr. Greestein's evaluation report has no bearing on the hearing officer's decision regarding the appropriateness of the educational program in 2001-2002. The correspondence, attached as Exhibit B, reveals the significant change in the student's medical condition.

In addition, the documentation provided reveals the difficulty experienced by the school system in getting appropriate medical recommendations for R.L. Mrs. L. testified at the underlying due process hearing that she would be more than willing to release information about R.L.'s condition. See September 11, 2001 Testimony of Mrs. L, attached hereto as Exhibit A. Yet, correspondence between Director of Special Education, Maureen Schiffer, and Mrs. L, is more telling; even during a time when R.L. had experienced serious regression in the school setting, Mrs. L. was unwilling to provide the school with a timely, appropriate release which would have allowed the school nurse and R.L.'s pediatrician to converse about R.L.'s medical condition. When Mrs. L. *finally* permitted the school nurse to speak with the pediatrician, the

---

[1] Indeed, Dr. Greenstein's report, at page 2, concedes that a complete medical history for R.L. was not obtained when making the recommendations for R.L.

2

advice and information was insufficient. Dr. Greenstein's evaluation was recommended by the PPT for appropriate medical clarification due to the ongoing regression of the student's condition.

Accordingly, for the foregoing reasons, and the various reasons provided in the Board's March 7, 2003 memorandum in opposition to the plaintiff's motion to submit additional evidence, the Board respectfully requests that this additional correspondence, attached as Exhibit B, be admitted and reviewed by the Court in light of this Court's Order granting the plaintiff the opportunity to supplement the record with Dr. Greenstein's October 2002 evaluation report.

THE DEFENDANT,
PLAINVILLE BOARD OF EDUCATION

By: /s/ Nicole A. Bernabo
Nicole A. Bernabo
Federal Bar No. ct19783
Sullivan, Schoen, Campane & Connon, LLC
646 Prospect Avenue
Hartford, Connecticut 06105
Telephone: (860) 233-2141
Facsimile: (860) 233-0516
E-mail: nbernabo@sscc-law.com

## CERTIFICATION

This is to certify that a copy of the foregoing Memorandum of Law in Support of the Motion to Submit Additional Evidence was sent via first-class mail, postage prepaid, on this 25th day of February 25, 2004, to Andrew Feinstein, 34 Jerome Avenue, Suite 210, Bloomfield, CT 06002.

_____
Nicole A. Bernabo

# EXHIBIT A

# ADMINISTRATIVE DUE PROCESS HEARING TESTIMONY
# OF
# MRS. L.,
# MOTHER

September 11, 2001

1  you're aware of?

2  A    Age appropriate, probably not.

3  Q    Do you know who did the sensory inventory for
4  Rhianna that Plainville conducted?

5  A    Are you referring to the handwritten list
6  that I had?

7  Q    Yes.

8  A    The only part of the name I remember is
9  Kelsey. I don't know if that's a last name or -- she
10 was from Easter Seals was my understanding.

11 Q    And you testified that this individual didn't
12 have sensory training, is that correct?

13 A    I don't really know her.

14 Q    So you don't know whether or not she had
15 expertise in sensory training or not?

16 A    I don't know what her expertise was.

17 Q    Okay. You seem to be upset with the school
18 for recommending that Rhianna see a doctor after she
19 fell at the school and hit her head and received a
20 bump. Is that true?

21 A    Say that again?

22 Q    There was a time period, perhaps in the
23 spring of this year, when Rhianna fell, hit her head
24 and she got a welt on her head, a bump --

1   A   -- at school, yes.

2   Q   And the nurse recommended that Rhianna see a
3   doctor. You seemed upset with that recommendation by
4   the school nurse, is that correct?

5   A   No, I wasn't upset with her recommendation.
6   My pediatrician found it to be extreme if she was not
7   showing any symptoms of a concussion.

8   Q   So you feel that the school nurse in
9   Rhianna's particular case shouldn't recommend for you
10  to see a doctor, is that, if she falls and hits her
11  head and receives a bump?

12  A   I think it depends on the bump and the
13  situation.

14  Q   Well, in this particular situation --

15  A   -- kids get bumps.

16  Q   -- in this particular situation where Rhianna
17  fell, hit her head, was extremely upset and had a bump,
18  do you feel it's appropriate that the school nurse
19  recommend that Rhianna see a doctor?

20  A   I think Rhianna's pediatrician should have
21  been contacted and it should have been determined that
22  way.

23  Q   Now, is that in her medical plan, a
24  recommendation such as that?

```
                                                        95
              HEARING RE: RHIANNA LOGAN
                   SEPTEMBER 11, 2001
```

1      A    No, I believe Dr. Morgan suggested that that

2  plan be enhanced and it never has been.

3      Q    And you believe a pediatrician can make a

4  recommendation over a telephone in Rhianna's situation

5  even though she has not seen her?

6      A    I believe Rhianna's pediatrician could do

7  that, yes.

8      Q    You testified several times that you would

9  like Rhianna's mainstream activities to be meaningful

10 to her. Can you please explain what you mean by

11 meaningful?

12     A    I don't want to see Rhianna placed in the

13 mainstream without the necessary modifications and

14 support that would be needed for her to do so. I don't

15 want to see her there if it's just going to be a

16 frustration and an upsetting situation for her. And I

17 feel that the school is not, does not have the staffing

18 to make that happen. So I have concern over, okay,

19 we'll mainstream her but she can't do it. She can't do

20 it without a lot of help and support.

21     Q    What type of activities do you see Rhianna

22 participating in in the third grade classroom?

23     A    I don't really think I have the

24 qualifications to know exactly what those would be. I,

```
              POST REPORTING SERVICE
              HAMDEN, CT  (800) 262-4102
```

1 and responsible for communication was not responding to
2 my letters at all.
3     Q   What letters are you referring to?
4     A   My letters towards, my notes to her the end
5 of the school year, perhaps since Rhianna's fall.
6     Q   Could you tell me how many letters you write
7 to staff on a weekly basis?
8     A   On a weekly basis?
9     Q   Yes. It averages probably to be about ten to
10 fifteen letters, isn't it?
11    A   There is daily notes, yes.
12    Q   There is daily notes to Regina. Who else do
13 you write daily notes to?
14    A   Well, usually I direct them to Regina because
15 that was my understanding that she would handle
16 communication between the family and the staff. This
17 year Ann seems to be responding. So I'm unclear as to
18 --
19    Q   What evaluative material have you provided to
20 the PPT team to request that the stroller be used in
21 school?
22    A   Excuse me.
23    Q   What evaluations or expert letters have you
24 provided to the PPT with respect to your request that

HEARING RE: RHIANNA LOGAN
SEPTEMBER 11, 2001
                                                                    105

1   the stroller be used in school or that the team
2   purchase a stroller?
3        A    I have not been asked to request, I have
4   been, I have not been requested to provide anything.  I
5   certainly can provide it on any level you'd like, local
6   or national.
7        Q    And how often does Rhianna use the stroller
8   in school, if at all?
9        A    Right now she's not using it at all.
10       Q    But if the school purchased it for her, when,
11  how often would she use it?  What's the purpose of it?
12       A    There are several purposes, field trips would
13  be a big concern.  Over the summer it was necessary for
14  at least two days of that program, two out of the four.
15  And then there is the bad mobility days and then there
16  is the future.
17       Q    Have you ever requested that Rhianna use a
18  special chair in school?
19       A    I made a suggestion at one time that possibly
20  the use of the stroller would be beneficial in the
21  classroom setting as a seating.
22       Q    Is Rhianna working on toilet training now?
23       A    She's supposed to be.
24       Q    Wasn't it agreed at a meeting that you would

POST REPORTING SERVICE
HAMDEN, CT   (800) 262-4102

**EXHIBIT B**

**CORRESPONDENCE
REGARDING CHANGE IN MEDICAL STATUS OF R.L.**

5/2/02
MEDICAL UPDATE

I shared a brief update with Ann on the day I returned Rhianna to school after her visit to the pulmonary doctor 4/22. We agreed to discuss further at our 4/23-team meeting, we did not have enough time.

As you know Rhianna has been diagnosed with obstructive sleep apnea. The cause of the obstruction has not been determined by the conferring doctors which included neurology, ENT and pulmonary. They all agreed that at this time the apnea is not significant enough to warrant treatment. Obstructive apnea can damage the heart and cause behavior problems. They recommended follow up with the cardiologist, to assure that no heart damage has occurred, and it is not expected. Rhianna will see the cardiologist on May 24. Rhianna will also see her North Carolina geneticist in June. At this time we have been advised to monitor the situation closely and watch for...
1. Increase of symptoms during sleep
2. Fatigue during the day
3. Behavior problems

I hope this provides you with the information you need, if not please let me know.

You will see on the daily communication sheet that I have requested data pertaining to tired and asleep. This information is important. I had made a request earlier in the log for specifics regarding Rhianna's fatigue yet no information was shared. I had to ask questions when Ann would just circle "yes" after "tired/asleep."

In response to Sandy's question regarding snacks at lunch bunch, thank you for asking! The only fruits or vegetables we avoid at this time are lettuce and anything that is stringy or shredded such as celery, sprouts, shredded carrot or cabbage etc. It is very nice of you to treat the kids and thanks for acknowledging Rhianna's request for the treats.

Because the cause of the apnea is not known at this time we have increased our awareness for Rhianna's airway and her ability to swallow. As you all know choking and aspiration can become a problem. We are paying closer attention to the size of Rhianna's food, her position when eating, her chewing, swallowing and her attentiveness when eating. I hope this helps. Communication and monitoring will be imperative. Thank you.

Cynthia



# PLAINVILLE COMMUNITY SCHOOLS

47 ROBERT HOLCOMB WAY • PLAINVILLE, CONNECTICUT 06062

**Dr. Kathleen Binkowski**
**Superintendent of Schools**
*(860) 793-3200*

**Ms. Maureen Schiffer**
**Director of Special Education**
*(860) 793-3214*

Mrs. Cynthia Logan
296 Camp Street
Plainville, CT 06062

March 6, 2002

Dear Cindy,

I have been made aware of the episode that Rhianna experienced at school last Wednesday, February 27, 2002 that has since been diagnosed as a seizure. Although no written documentation has been provided, it appears Rhianna is now being treated for seizures with medication. My office will contact you shortly to schedule a PPT to discuss adding aide support to Rhianna's bus ride.

In light of this episode and in our ongoing efforts to provide Rhianna with a safe school environment, I feel it is imperative that Cindy Ross have a signed release to speak with Dr. Geddis directly regarding proper procedures for this most recent medical development and any future medical developments. Pending direct contact with Dr. Geddis, I have advised all school personnel to keep Rhianna off all stairs. I am aware that Dr. Geddis has a release to call us but without a signed release from you, Cindy Ross, is unable to ask her any questions or even relay to her specific descriptions about what is happening at school. Based on Cindy's conversation with Dr. Geddis today, she has not received the written documentation regarding the events of 2/27/02 that we submitted to you for her review. We feel vital information is not being exchanged with Dr. Geddis regarding Rhianna's school presentation.

I feel very strongly that without your written consent to discuss Rhianna's medical condition directly with her pediatrician we will be unable to provide an appropriate educational environment for Rhianna at Toffolon Elementary School. Your immediate cooperation in this matter is greatly appreciated. I have enclosed a release form for your convenience.

Sincerely,

*[signature]*

Maureen Schiffer
Special Education Director

Cc: Cindy Ross

**RECEIVED**

**MAR  8 2002**

Sullivan, Schoen, Campane & Connon



# PLAINVILLE  COMMUNITY  SCHOOLS

47 ROBERT HOLCOMB WAY  •  PLAINVILLE, CONNECTICUT 06062

**Dr. Kathleen Binkowski**
**Superintendent of Schools**
**(860) 793-3200**

**Ms. Maureen Schiffer**
**Director of Special Education**
**(860) 793-3214**

Mrs. Cynthia Logan
296 Camp Street
Plainville, CT  06062

March 26, 2002

Dear Cindy,

I was very surprised by your letter that was delivered to my office on 3/18/02 and feel compelled to address the numerous inaccuracies:

1. Cindy Ross has indeed asked you prior to my March 6 letter for a signed release. I have attached a copy of the release she sent to you on 1/16/02 with a note on the top. The note is in response to your note (see attached) dated 1/15/02 regarding the PECS book and possible germ concerns. You can clearly see the reference to the release written in the margin to your 1/15/02 note. You also referenced the numerous releases that the school has sent home in your own letter to the PPT dated 2/11/02. In fact, you resubmitted this same letter to Cindy Ross on 3/4/02 when Rhianna returned to school for the first time after her 2/27/02 episode.

2. You state in your letter that Cindy Ross refused to fax information to Dr. Geddis. In fact, she offered to fax it if you would come into her office and sign a release. It was your decision at that point to come to the school and obtain the documents with the intention of hand carrying them to Dr. Geddis's office rather than sign the release. Surprisingly, when Dr. Geddis called Cindy Ross, at your request, on March 5, 2002, she indicated that she had not received this written documentation.

3. Mrs. Ross has thoroughly reviewed her response to the episode that occurred on 2/27/02 and the subsequently developed seizure protocol with our town physician, Dr. Petit. He has no concerns with either process. I was quite shocked when Cindy Ross notified me on 2/28/02 (the day after Rhianna's episode) that you had been aware of an abnormal EEG result and a pending sleep apnea study prior to Rhianna's significant school episode on 2/27/02 but did not share this information with the school.

4. As you are aware we came to agreement at a PPT held 3/19/02 that Rhianna would not be utilizing stairs at school until Dr. Geddis provided written clearance. Per your request at the 2/12/02 PPT, Sue Freeman had agreed to review stair protocol with all staff involved with Rhianna on the stairs. At no time during this meeting did we agree with your assertion that previous training was inadequate or done improperly.

Finally, I am aware of your numerous requests to meet with paraprofessional and school staff to review Rhianna's current status. As discussed at the PPT held 3/19/02, all staff working with Rhianna has been thoroughly trained and have as much information as you have provided to us. Regular meeting times have been established to give you time to meet with school staff to discuss Rhianna's needs. When you combine that with the voluminous communication systems, I am very confidant that staff is more than adequately informed.

Sincerely,

Maureen Schiffer

*sign this release. That way
if Dr. Geddis has any
concerns she can contact m_
directly + I can then also
respond to her.
[illegible] concerns.*

Plainville Community Schools
Plainville, CT 06062

## Authorization to Release and/or Obtain Student Records and Reports

I hereby authorize personnel from the Plainville Community Schools to release and/or obtain information regarding my child:

Student: Rhianna Logan
Address: 296 Camp St
         Plainville, CT
Date of Birth: 10/15/92
Telephone: 747-2170

Authorization includes ORAL ✓ and/or WRITTEN ✓ EXCHANGE OF INFORMATION between the following parties:

**Plainville Community Schools**
School: Toffolon
Attention: Cynthia Ross
Title: School Nurse
Address: 145 Northwest Dr.
Plainville, CT 06062
Telephone: 793-3283
Fax: 793-6302

**Second Party**
Name: Dr. Angela Geddis
Title:
Address:
Telephone:
Fax:

Authorization includes the following areas:

| Release | Obtain | Area |
|---|---|---|
| ☐ | ☐ | Administrative (address, date of birth, attendance record, etc.) |
| ☐ | ☐ | Teacher/Staff Member Observations |
| ☐ | ☐ | Educational/Achievement |
| ☐ | ☐ | Psychological |
| ☐ | ☐ | Speech/Language |
| ☐ | ☐ | Psychiatric |
| ☒ | ☒ | Medical |
| ☐ | ☐ | IEPs |
| ☐ | ☐ | Other _____ |
| ☐ | ☐ | All Students Records |

_____
PRINT NAME OF PARENT/GUARDIAN/STUDENT (18 OR OVER)

_____          _____
SIGNATURE OF PARENT/GUARDIAN/STUDENT (18 OR OVER)    DATE

*This authorization valid for year from parent signature.

SPED-26                                              Revised 12/04/01

1/15/02

Hello Mr. Ross,

Would you please check Rhianna's PECs book, it appears to be a breeding ground for germs. I am also concerned about hygiene with regards to leaky diap. Is there a protocol in place for clean up of the area where a leak occurs?

Rhianna has an appointment with her pediatrician, Dr. Geddis this Friday for 6 month well check visit. I will upda you sometime next week. Could you the update your "care plan" to include the PECs book, the diaper issues, the hearin aids that are now the responsibility of sch staff and anything that may arise from Rhianna's Friday appointment? Tha you for your help keeping Rhianna healt and happy.

Sincerely, Cynthia Logan

*Margin note:* I have checked on this issue. I feel confident that there are procedures in place to take care of delivering... I am sending this form to be added to any concerns of Dr. Geddis. I'm glad she had a good visit.

2/11/02

Dear Ms. Schiffer and fellow team members,

We have recently been sent several consent forms to release medical information regarding Rhianna. Gene and I have no problem sharing any information that is necessary to provide Rhianna with an appropriate educational program. Actually we feel that any team decisions that are going to be based on Rhianna's medical status should be made with the correct information from the appropriate doctor. However we will not be signing any open-ended consent forms. After consulting with Rhianna's pediatrician, Dr. Angela Geddis it was decided that all requests for information be done on an as needed basis after a reason for the request is provided. Each request can be sent to Gene and I, we will then forward it to Dr. Geddis who oversees Rhianna's medical team. Upon her approval she will access the information you need.

We have great respect for the medical team that we have developed over the past nine years. Their importance in our lives will only become much greater as time passes. There are several reasons for our decision regarding consent forms, at this time the only one we care to share is our need to keep Rhianna's medical team intact. You can't imagine the difficulties involved with her care when accessing a hospital facility and staff does not know of Rhianna's syndrome. That is just the beginning. So it then becomes critical to have the support of the professionals who do know her syndrome. Dr. Geddis prefers that these professionals not be interrupted unless it is imperative to Rhianna's needs. I have attached a list as a reference to the specialists that comprise Rhianna's medical team at this time. We appreciate your understanding and cooperation in this matter.

Sincerely,

Cynthia and Gene Logan

## CYNTHIA & GENE LOGAN

296 Camp Street
Plainville, CT  06062
(860) 747-2170 Home (860) 747-4121 Work (860) 747-6717 Fax

March 12, 2002

Dear Ms. Schiffer,

    I have    enclosed the written consent for school nurse Mrs. Cindy Ross to speak to Rhianna's pediatrician Dr. Angela Geddis as you requested in your letter.
Gene and I are relieved to know that you will now have Dr. Geddis involved.
We were very dissatisfied with the way the events of February 27 were handled.

                            Sincerely,

                            Cynthia Logan


RECEIVED MAR 1 2 2002

**Plainville Community Schools**
Plainville, CT 06062

## Authorization to Release and/or Obtain Student Records and Reports

*I hereby authorize personnel from the Plainville Community Schools to release and/or obtain information regarding my child:*

**Student** Rhianna Logan            **Date of Birth** 10·15·92
**Address** 296 Camp St.             **Telephone** 860·747·2170
Plainville, CT 06062

*Authorization includes* **ORAL** ___ *and/or* **WRITTEN** ___ **EXCHANGE OF INFORMATION** *between the following parties:*

| **Plainville Community Schools** | | **Second Party** |
|---|---|---|
| **School** Toffolon Elementary | **Name** | Dr. Angela Geddis |
| **Attention** Mrs. Ross | **Title** | pediatrician |
| **Title** School nurse | **Address** | Grove Hill Medical Center |
| **Address** 145 Northwest Dr. | | 184 East St. |
| Plainville, CT 06062 | | Plainville, CT 06062 |
| **Telephone** 793-3283 | **Telephone** | 747-1132 |
| **Fax** | **Fax** | 747-0354 |

*Authorization includes the following areas:*

| Release | Obtain | Area: |
|---|---|---|
| ☐ | ☐ | **Administrative** (address, date of birth, attendance record, etc.) |
| ☐ | ☐ | **Teacher/Staff Member Observations** |
| ☐ | ☐ | **Educational/Achievement** |
| ☐ | ☐ | **Psychological** |
| ☐ | ☐ | **Speech/Language** |
| ☐ | ☐ | **Psychiatric** |
| ☒ | ☒ | **Medical** |
| ☐ | ☐ | **IEPs** |
| ☐ | ☐ | **Other** _____ |
| ☐ | ☐ | **All Students Records** |

Cynthia Logan
PRINT NAME OF PARENT/GUARDIAN/STUDENT (18 OR OVER)

*[signature]*                                3/12/02
SIGNATURE OF PARENT/GUARDIAN/STUDENT (18 OR OVER)              DATE

*This authorization valid for year from parent signature.*

[RECEIVED MAR 12 2002]

SPED-26                                              Revised 12/04/01